NOT FOR PUBLICATION                          [Dkt. Nos. 84 & 91]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

JOHN KIM,

        Plaintiff,

   v.                                 Civil No. 09-1553(RMB/JS)

MARINA DISTRICT DEVELOPMENT              **OPINION**
COMPANY LLC,

        Defendant.

**BUMB,** UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon a motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), by defendant Marina District Development Company (the "Defendant"), as well as a cross-motion for summary judgment, pursuant to Local Civil Rule 7.1(h), by plaintiff John Kim (the "Plaintiff"). In this negligence action Plaintiff asserts claims against Defendant for serving him spoiled food and for providing negligent medical care after he experienced symptoms consistent with "food poisoning" at Defendant's Borgata casino. Here, Defendant seeks partial summary judgment on Plaintiff's negligent treatment claim and request for punitive damages. Defendant maintains that it had no duty to treat Plaintiff; that it is not liable for the acts or omissions of the individuals who treated

1

Plaintiff; and that Plaintiff cannot satisfy the standard for recovering punitive damages. Plaintiff responds that Defendant is liable for failing to treat or negligently responding to Plaintiff's illness and that Defendant's conduct constituted a "wanton and willful disregard" for Plaintiff that warrants the imposition of punitive damages. (Am. Compl. ¶ 28.) For the following reasons, Defendant's motion will be granted.

**I. BACKGROUND**

**A. Facts**

Plaintiff's allegations, as set forth in his Amended Complaint, are as follows.[1] On February 1, 2008, Plaintiff and his friend checked into a room at Defendant's Borgata casino in Atlantic City. (Am. Compl. ¶ 6.) The following morning, Plaintiff ordered steak and eggs from room service. (Id. ¶ 7.) Within 45 minutes of eating, Plaintiff began to experience gastrointestinal discomfort. (Id. at 8.) His symptoms progressed, and within a few hours, Plaintiff was suffering from nausea, diarrhea, body aches, cramps, and dizziness. (Id. ¶¶ 10, 12, 13.)

That afternoon, EMTs at the casino responded to Plaintiff's request for medical assistance. (See id. ¶ 16.) The EMTs were

---

[1] Plaintiff incorporates his allegations from the original Complaint into his Amended Complaint without duplicating them in the Amended Complaint. The Court will cite to relevant paragraphs of the original Complaint as if they were included in the Amended Complaint.

employees of Medical One, a company that provided medical services at the casino. (Agreement 1 [Def.'s Ex. B].) The medical staff gave Plaintiff Pepto-Bismol and told him to contact the medical unit again if his symptoms persisted or worsened. (Am. Compl. ¶ 16; Customer Illness Report [Def.'s Ex. E].)

Plaintiff experienced the same symptoms when he awoke the next morning, so he decided to check out and drive home to Maryland. (Am. Compl. ¶ 18.) Plaintiff visited the Medical One clinic in the hotel after checking out. (Id. at 19.) During an examination of the Plaintiff, the medical staff determined that Plaintiff's body temperature was low, and Plaintiff decided to go to the hospital. (Id. ¶ 20; Patient Care Report [Def.'s Ex. G].) Borgata security guards escorted Plaintiff to the hospital for treatment. (Am. Compl. ¶ 20.) Plaintiff's symptoms continued during the following week. (Id. ¶ 25.) Plaintiff could not work at his dental practice for the entire week, and Plaintiff claims he lost nearly $80,000 in earnings due to his illness. (Id. ¶ 27.)

**B. The Relationship Between Defendant and Medical One**

Medical One, a medical services provider, operated the medical unit at Defendant's casino. (Agreement 1 [Def.'s Ex. B].) The agreement between Defendant and Medical One states that Medical One is an independent contractor. (Id.) Medical One was to have "sole authority and responsibility for the medical

3

services provided" and "all aspects of the conduct and operation of the medical office." (Id.) Medical One was also responsible for supplying some equipment to provide medical services at the Borgata. (Id. at 5.)

Colleen Contino and James Jones, the individuals who treated Plaintiff, were employed by Medical One. (Contino Dep. 16 [Def.'s Ex. F]; Jones Dep. 15 [Def.'s Ex. H].) Both received paychecks from Medical One. (Contino Dep. 16 [Def.'s Ex. F]; Jones Dep. 15 [Def.'s Ex. H].) The Borgata employees who interacted with Plaintiff merely escorted him to the hospital or saw him when they accompanied the medical staff to treat Plaintiff. (Contino Dep. 15 [Def.'s Ex. F]; McAllister Dep. 8 [Def.'s Ex. I].)

## C. Procedural History

Plaintiff initiated this suit on April 2, 2009. The Court issued an Order to Show Cause questioning its subject-matter jurisdiction on April 8, 2009. Plaintiff responded to the Order on April 15, 2009. On October 1, 2009, Plaintiff filed an Amended Complaint in which he alleges that Defendant was negligent in serving food that made him ill and in its treatment of--or failure to treat--Plaintiff. (Am. Compl. ¶¶ 35, 41.) Plaintiff filed a motion for summary judgment on May 17, 2010. (Dkt. Ent. 85.) The Court promptly denied this motion on May 21, 2010, due to procedural and substantive deficiencies. (Dkt. Ent. 87.) On

May 24, 2010, Plaintiff filed a motion for reconsideration (Dkt. Ent. 88), which the Court promptly denied on May 26, 2010. (Dkt. Ent. 89.) Defendant filed a motion for partial summary judgment on May 17, 2010. (Dkt. Ent. 84.) Plaintiff then filed a cross-motion for partial summary judgment on June 2, 2010. (Dkt. Ent. 91.)

## II. STANDARD OF REVIEW

Summary judgment should be granted if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 250.

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "a mere scintilla of evidence," without more, will not give rise to a genuine issue for trial. Anderson, 477 U.S. at 249. In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the

nonmoving party . . . ." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

## III. DISCUSSION

As noted, in his Amended Complaint, Plaintiff asserts negligence claims against Defendant for serving illness-inducing food and providing inadequate medical treatment. Defendant now moves for partial summary judgment on Plaintiff's negligent treatment claim and Plaintiff's request for punitive damages.

### A. NEGLIGENT TREATMENT

Defendant seeks partial summary judgment on Plaintiff's allegation that Defendant was negligent in treating--or failing to treat--Plaintiff. Defendant contends that it had no duty to treat Plaintiff; that the individuals who treated Plaintiff were not Defendant's employees or were immune from liability pursuant to New Jersey's Good Samaritan Act; and that Defendant is not liable for an independent contractor's acts or omissions. (See Def.'s Summ. J. Br. 7-13.)

The Court will address each of these issues in turn. The Court will first determine the duty of a casino to provide medical care to its patrons, and whether Defendant can be held liable for the acts or omissions of the individuals who treated Plaintiff.[2] The second issue hinges on the employment status of

---

[2] Plaintiff fails to identify clear theories of recovery for the Court to consider. In one sentence Plaintiff appears to concede that employees of Medical One were not negligent in their treatment of Plaintiff by stating, "Plaintiff never alleged Medical One's treatment of him was negligent." (Def.'s Opp'n Br. 6.) This concession would suggest that the Court need not

the medical staff. If the medical staff members were independent contractors, the Court will determine whether Defendant could nonetheless be held liable for their negligence under an exception to general contract rules. If the medical staff members were Defendant's employees, their acts or omissions will be assessed according to the duty owed by Defendant to Plaintiff as a client of the casino.

**1. A Casino's Duty to Provide Medical Care to Its Patrons**

The Court first considers a casino's duty to provide medical care to its customers. Although no New Jersey state courts have addressed this issue directly, in <u>Lundy v. Adamar of New Jersey</u>, the Third Circuit determined that New Jersey law does not impose a duty on casinos to care for injured customers. 34 F.3d 1173 (1994). To make this determination, the Court drew an analogy to the duty owed by an employer to an injured employee. <u>Id.</u> at 1178. The Court found that under New Jersey law, "There rests no duty upon an employer to provide medical service or other means of cure to an ill, diseased or injured employee, even though it

---

consider issues of respondeat superior or third party liability. In the next sentence, however, Plaintiff alleges that Defendant was negligent because of its "non-treatment" of Plaintiff. (<u>Id.</u>) As will be discussed, given that Medical One was contractually responsible for all medical treatment at Defendant's casino, it would seem that these positions are contradictory.

To ensure a thorough review of the negligent treatment claim, the Court will consider all relevant issues, despite Plaintiff's conflicting statements.

results from the negligence of the master." Id. at 1178 (citing

Szabo v. Pennsylvania R.R. Co., 132 N.J.L. 331, 40 A.2d 562

(1945)). The Court then determined that a casino owes a similar

duty to injured patrons. 34 F.3d at 1179. New Jersey law

recognizes only a duty of a casino to call for aid for a

"helpless" customer unable to summon medical assistance on his

own. See id.; Jarrah v. Trump Hotels & Casino Resorts, Inc., 487

F. Supp. 2d 522, 527 (D.N.J. 2007). Finally, Lundy rejected the

contention that by hiring an independent contractor to provide

medical services, the casino assumed a duty to provide adequate

medical care to customers. 34 F.3d at 1180.[3]

---

[3] While Section 314A of the Restatement (Second) of Torts
may be relevant, neither party has raised it in their briefs, so
the Court need not consider it in detail here. If § 314A were
applied, the Court would find that Defendant satisfied its duty.
In Lundy, the Third Circuit declined to adopt § 314A and noted
that the provision would merely require a landowner to "procure
appropriate medical care as soon as the [patron's] need becomes
apparent" and provide reasonable first aid before more qualified
medical staff arrived. 34 F.3d at 1179 (citing Restatement
(Second) of Torts § 314A (1965)).
   There is ample evidence that Defendant satisfied this duty
by dispatching qualified medical staff to treat Plaintiff twice,
encouraging him to seek further medical care if his condition did
not improve, and transporting Plaintiff to the hospital upon his
request. Plaintiff never told Defendant's employees that he
needed additional medical assistance (Kim Dep. 37 [Def.'s Ex.
C]), and his symptoms were not outwardly apparent. The record
thus indicates that Plaintiff received appropriate medical care
from Defendant and that Defendant brought Plaintiff to more
qualified medical professionals when his symptoms persisted, as
required by § 314A.

Applying <u>Lundy</u> to this case, Defendant's only duty here was to summon medical assistance if Plaintiff became helpless. There is no evidence, however, that Plaintiff here was rendered helpless by his condition. Plaintiff was able to move from his room to the lobby to check out on the morning after he became sick and even planned to travel home to Maryland. (Am. Compl. ¶¶ 18-19.) Additionally, Plaintiff's friend cared for him when he became ill (Am. Compl. ¶¶ 15, 17), and presumably she could have summoned medical assistance if it became necessary in an emergency. The record thus clearly demonstrates that Plaintiff's illness did not render him "helpless" and unable to summon medical assistance on his own, as required by <u>Lundy</u> to establish a duty. Therefore, there are no disputed issues of fact material to the question of whether Defendant owed Plaintiff a duty of care: because Defendant's physical condition did not trigger a duty in the casino to provide medical assistance, Defendant is not liable for failing to treat Plaintiff.

**2. The Employment Status of the Medical Staff**

Because the casino had no duty to provide medical care to Plaintiff, the Court need not consider issues of respondeat superior or liability for the acts of independent contractors. However, in the interest of completeness, the Court addresses this issue--and all questions relevant to this inquiry-- nonetheless.

10

The Court next considers whether Contino and Jones, the individuals who treated Plaintiff, were Defendant's employees or independent contractors.

The New Jersey Supreme Court has adopted the following factors from the Restatement of Agency to determine whether an individual "acting for another" is a servant or an independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business of the employer;
>
> (i) whether or not the parties believe they are creating the relation of master and servant; and

Carter v. Reynolds, 175 N.J. 402, 410, 815 A.2d 460, 464 (2003) (citing Restatement (Second) of Agency § 220 (1958)). Although these factors often give rise to a jury question, summary

judgment is appropriate if there are no disputed material facts. Marion v. Public Service Elec. & Gas Co., 72 N.J. Super. 146, 157 (1962) (citing Price v. Old Label Liquor Co., Inc., 23 N.J. Super. 165, 169, 92 A.2d 806 (1952)).

Applying these factors to the case at hand, it is clear that Contino and Jones could not reasonably be considered employees of Defendant. The agreement between Defendant and Medical One states that Medical One was to have "sole authority and responsibility for the medical services provided" and "all aspects of the conduct and operation of the medical office." (Agreement 1 [Def.'s Ex. B].) Plaintiff has offered no evidence suggesting that Defendant could or did exercise control over medical care in the casino. Regarding the second factor, providing medical care is a completely distinct function from operating a casino. Cf. Barbetta v. S/S Bermuda Star, 848 F.2d 1364, 1369 (5th Cir. 1988) (stating that a passenger ship owner cannot be held liable for the negligent acts of an on-board doctor, in part because "a shipping company is not in the business of providing medical services to passengers." (quoting Amdur v. Zim Israel Navigation Company, 310 F. Supp. 1033, 1042 (S.D.N.Y. 1969))).

Regarding the remaining factors, Plaintiff has offered no evidence suggesting that Defendant's employees supervised the work of Medical One's employees. Defendant's employees escorted Medical One employees to treat Plaintiff (Contino Dep. 15 [Def.'s

Ex. F]), but Defendant has said, and the Court has no reason to doubt, that these individuals were there solely to provide security, not to supervise the medical staff. (Def.'s Summ. J. Br. ¶¶ 9, 11.) Contino and Jones had parademic and EMT certifications and were therefore independently qualified to provide medical services. (See Contino Dep. 7 [Def.'s Ex. F]; Jones Dep. 6 [Def.'s Ex. H].) Although Defendant provided space for a medical office (Agreement 1 [Def.'s Ex. B]), Medical One was responsible for providing medical equipment to treat sick customers. (Id. at 5.) Furthermore, Contino and Jones received paychecks from Medical One, not Defendant. (Contino Dep. 16 [Def.'s Ex. F]; Jones Dep. 15 [Def.'s Ex. H].) Their role in providing medical care was not part of Defendant's regular business, which is to offer gambling and entertainment. Contino and Jones clearly understood that they were employees of Medical One--not Defendant--and they were managed by other employees of Medical One. (Contino Dep. 16 [Def.'s Ex. F]; Jones Dep. 15 [Def.'s Ex. H].)

Based on this analysis of the Restatement factors, the Court concludes that Contino and Jones were not employees of the Defendant corporation. Therefore, Defendant's potential liability will be assessed with the understanding that Plaintiff received

aid from Contino and Jones as independent contractors, not casino employees.

## 3. A Principal's Liability for the Acts of Independent Contractors

Under New Jersey law, an employer who hires an independent contractor is generally not liable for the negligent acts of the contractor in the performance of the contract. Bahrle v. Exxon Corp., 145 N.J. 144, 156, 678 A.2d 225 (1996). There are, however, three exceptions to this general principle: (1) where the principal retains control over the manner and means of the work; (2) where the principal engages an incompetent contractor; and (3) where the activity constitutes a nuisance per se. Muhammad v. N.J. Transit, 176 N.J. 185, 197, 821 A.2d 1148 (2003) (citing Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425, 431, 153 A.2d 321 (1959)). Based on Plaintiff's averments, only the first exception is relevant here.[4]

To determine whether a principal exercises control over the manner and means of the contractor's work, the New Jersey courts consider factors such as "the reservation of control over the equipment to be used, the manner or method of doing the work, [and] direction of the employees of the independent contractor." Mason v. Paris, No. A-2815-05T5, 2007 WL 108310, *3 (App. Div.

---

[4] At no time has Plaintiff averred that Medical One is an incompetent contractor or that providing medical care constitutes a nuisance per se.

14

Jan. 18, 2007) (citing <u>Mavrikidis v. Petullo</u>, 153 N.J. 117, 135, 707 A.2d 977 (1998)).

There is insufficient evidence in the record for Plaintiff to establish that Defendant maintained control over the manner and means of the work performed by Contino and Jones. Regarding the first factor, Medical One provided and maintained medical services equipment. (Agreement 5 [Def.'s Ex. B].) Additionally, Medical One's employees followed the policies of Medical One, not Defendant's, when performing their job duties. (<u>See</u> Contino Dep. 17-18 [Def.'s Ex. F].) Furthermore, Medical One employees received job instructions from Medical One, not Defendant. (<u>Id.</u> at 16.) Contino stated that if she had concerns about her employment, she would discuss them with Medical One's managers and not Defendant's. (<u>Id.</u> at 17.)

This information confirms the terms of the agreement between Defendant and Medical One. The agreement provides that Medical One "shall have sole authority and responsibility for the medical services provided . . . and for all aspects of the conduct and operation of the Medical Office." (Agreement 1 [Def.'s Ex. B].) Requiring a medical services contractor to abide by the state Board of Medical Examiners' rules and regulations (<u>see id.</u> at 1), and to ensure that its employees have proper certifications (<u>see id.</u> at 4), does not establish that a casino is in control of the

15

medical operations. <u>See</u> <u>Jarrah v. Trump Hotels & Casino Resorts,</u>
<u>Inc.</u>, 487 F. Supp. 2d 522, 529 (D.N.J. 2007) (stating that
contractual terms that require a medical provider to ensure that
its staff members have valid certifications "apply only to the
quality of the services provided, and do not transfer an
independent contractor into an employee").

Even construing all facts and reasonable inferences in
Plaintiff's favor, the record establishes that Defendant did not
maintain control over the "manner and means" of the work
performed by Medical One's employees and thus cannot be held
liable for their alleged negligence.

**4. Apparent Authority Doctrine**

Under the apparent authority doctrine, a principal can be
held liable for the negligent acts of an independent contractor
if the principal has led the public to believe that it has
authority over the negligent contractor. <u>Basil v. Wolf</u>, 193 N.J.
38, 67, 935 A.2d 1154 (2007) (citing <u>Arthur v. St. Peters Hosp.</u>,
169 N.J. Super. 575, 580, 405 A.2d 443 (Law Div. 1979)). For a
party to invoke the apparent authority doctrine, there must be
(1) conduct by the principal that would lead a reasonable person
to believe that another person acts on the principal's behalf,
and (2) reasonable reliance on the agent's services. <u>Estate of</u>
<u>Cordero ex rel. Cordero v. Christ Hosp.</u>, 403 N.J. Super. 306,

314, 958 A.2d 101 (2008) (synthesizing Restatement (Second) of Torts, § 429, and Restatement (Third) of Agency, § 2.03).

Apparent authority is typically a question of fact for a jury to determine, Gizzi v. Texaco, Inc., 437 F.2d 308, 310 (1971); however, as a matter of law, apparent authority does not exist when there is no evidence that a plaintiff relied upon a defendant's apparent authority. Neal ex rel. Scott v. New Jersey State Dept. of Corrections, No. A-3885-01T3, 2002 WL 3174197, *8 (App. Div. Oct. 24, 2002).

In Jarrah, this Court held that a casino was not liable under the apparent authority doctrine for negligent medical treatment provided by a medical services contractor. 487 F. Supp. 2d at 530. The Court plainly stated, "[The casino] is not a provider of medical services. Thus, it would be unreasonable for a person who gambles at the casino to rely on [the casino] to provide quality medical service." Id. at 530 (citing Neal ex rel. Scott, No. A-3885-01T3, 2002 WL 3174497 (App. Div. Oct. 24, 2002)).

Jarrah distinguished its facts from those of Arthur v. St. Peter's Hospital, a case where a plaintiff-patient sued a hospital after physicians misread an x-ray. 169 N.J. Super. 575, 583, 405 A.2d 443 (1979). Arthur rejected the hospital's argument that the physicians were independent contractors, ruling that the

17

hospital could be found liable under the apparent authority
doctrine. Id. at 583. Jarrah noted that patients seeking medical
assistance in an emergency room would assume that physicians
there are employees of the hospital and would therefore rely on
the reputation of the hospital when seeking treatment. 487 F.
Supp. 2d at 530. A casino patron, however, would have no
reasonable expectations about the type or quality of medical care
he would receive from individuals working at a casino. Id.
Therefore, the court reasoned, a casino could not be held liable
for an independent medical provider's negligence under the
apparent authority doctrine. Id.

Here, even considering that the medical unit at Defendant's
Casino was referred to as "Medical One @ the Borgata," a fact
which may support the first element of the apparent authority
test, a reasonable person would not have relied on the quality of
the medical care provided by a casino. See Jarrah, 487 F. Supp.
2d at 530. Plaintiff thus cannot satisfy the reasonable reliance
element of the apparent authority test, and summary judgment is
therefore appropriate under New Jersey law.

**5. Respondeat Superior**

As noted, New Jersey law does not impose a duty on casinos
to care for injured customers. Lundy v. Adamar of New Jersey, 34
F.3d 1173, 1179 (3d Cir. 1994). Additionally, a casino does not

incur a duty--where it had no preexisting one--to provide adequate medical care to customers simply by hiring individuals to provide medical services. Id. at 1180. Furthermore, the Good Samaritan Act immunizes casinos from liability arising from the negligence of their employees in trying to provide medical care to patrons. Id. at 1181 n.11. New Jersey's Good Samaritan Act states that anyone "who in good faith renders emergency aid at the scene of an . . . emergency to the victim . . . shall not be liable for any civil damages as a result of acts or omissions by such person in rendering the emergency care." N.J.S.A. § 2A:62A-1. The Act covers individuals who have licenses or certifications to treat injured individuals. Id.

Therefore, even if Contino and Jones could be considered Defendant's employees, Defendant could not be held liable for any alleged negligence. Defendant had no duty to provide medical care and did not incur one by hiring medical staff to treat injured customers. Even if Plaintiff's condition were to be considered an emergency, to the extent that agents for Defendant undertook to affirmatively aid Plaintiff, Lundy instructs that the Good Samaritan Act insulates such conduct from liability.

For these reasons, Defendant's motion for partial summary judgment on Plaintiff's negligent treatment claim will be granted.

**B. PUNITIVE DAMAGES**

Defendant also moves for summary judgment on Plaintiff's request for punitive damages. (Def.'s Summ. J. Br. 13). Plaintiff cross-moves on this issue as well. (Pl.'s Cross-mot. 4).

A court may award punitive damages in New Jersey pursuant to N.J.S.A. 2A: 15-5.12:

> Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

N.J.S.A. 2A: 15-5.12(a). In deciding whether to award punitive damages, a New Jersey court must consider factors such as:

> (1) The likelihood . . . that serious harm would arise from the defendant's conduct
>
> (2) The defendant's awareness [or] reckless disregard of the likelihood [of] . . . serious harm . . .
>
> (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and
>
> (4) The duration of the conduct or any concealment of it by the defendant.

N.J.S.A. 2A: 15-5.12(b). The New Jersey Supreme Court has set a demanding standard for the type of conduct that warrants an award of punitive damages. The Court has required "an intentional

wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of another." <u>Nappe v. Anschelewitz, Barr, Ansell & Bonello</u>, 97 N.J. 37, 49 (1984) (citing <u>DiGiovanni v. Pessel</u>, 55 N.J. 188, 191, 260 A.2d 510 (1970)).

Plaintiff here has failed to establish that the acts of Defendant's employees were consistent with a "wanton and willful disregard" for Plaintiff, as required by New Jersey law to impose punitive damages. As explained in Part A, Defendant did not breach a duty to Plaintiff through the medical care it provided or through its alleged failure to summon expert medical care. The record indicates that Defendant's employees made consistent efforts to enable Plaintiff to acquire medical attention. When Plaintiff attempted to check out of the hotel on February 2, 2008, Defendant's front desk employee urged Plaintiff to visit the medical unit at the hotel. (Am. Compl. ¶ 19.) Additionally, Defendant's security staff escorted the Medical One employees to treat Plaintiff in his hotel room (<u>see</u> Contino Dep. 17 [Def.'s Ex. F]) and brought Plaintiff into the medical unit for medical evaluation.(<u>See</u> Jones Dep. 12 [Def.'s Ex. H].) Finally, Defendant's security staff transported Plaintiff to the hospital and returned him to the casino after he received hospital care. (McAllister Dep. 8-9 [Def.'s Ex. I].) Plaintiff's allegation that

Defendant's employees willfully disregarded Plaintiff's condition is inconsistent with this evidence from the record. Therefore, Defendant cannot be liable for punitive damages under Plaintiff's negligent treatment claim.

The Court must also consider whether Plaintiff could recover punitive damages on his remaining claim--namely, that Plaintiff was negligent in serving the food that made him sick. Plaintiff has presented no evidence that Defendant knowingly or willfully served him spoiled food. In fact, Plaintiff's claim alleges mere negligence, which does not warrant punitive damages under New Jersey law. N.J.S.A. 2A: 15-5.12(a).

Because Defendant had no duty to provide expert medical care to Plaintiff, and Plaintiff has made no allegation that Defendant willfully served Plaintiff spoiled food, Defendant's motion for summary judgment on Plaintiff's request for punitive damages will be granted, and Plaintiff's cross-motion will be denied.

**IV. Conclusion**

For the aforementioned reasons, Defendant's Motion for Partial Summary Judgment on Plaintiff's negligent treatment claim and request for punitive damages will be granted, and Defendant's cross-motion will be denied. An appropriate order will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Date: July 14, 2010